UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  3:22-CR-00267-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ROBERT SCOTT BROWN JR. (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Pending before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress [doc. #28] filed by Defendant Robert S. Brown, Jr.  The motion is opposed. [doc. #30].  For reasons that follow, IT IS RECOMMENDED that the motion to suppress be DENIED.

### Background

Beginning in August 2021, FBI Special Agent William Scullin began investigating distribution of Child Sex Abuse Material ("CSAM") on an online peer-to-peer file sharing network called Freenet.  [doc. #30, p. 5].  As a result of this investigation, Agent Scullin identified an IP address that was downloading CSAM.  [doc. #30, p. 5].  Subsequently, Agent Scullin obtained an administrative subpoena to Comcast Communications, Inc., and learned that the IP address belonged to a computer at 3012 Deborah Drive in Monroe.  *Id.*

On January 28, 2022, Agent Scullin obtained a search warrant for 3012 Deborah Drive, the home of Defendant's parents.  *Id.* at 5.  Agents executed the warrant on February 1, 2022.  *Id.* Agents found no CSAM in the home but learned from Defendant's parents that Defendant recently moved to an apartment nearby, at 3100 Deborah Drive.  *Id.*

Agents then contacted Defendant, who agreed to travel to his parents' home for an interview.  *Id.*   Agents *Mirandized* Defendant, who subsequently admitted to viewing

"older/younger" pornography but denied downloading CSAM via Freenet. *Id.* at 6. The Defendant also confirmed he recently moved from his parents' home at 3012 Deborah Drive to an apartment at 3100 Deborah Drive. *Id.*

Ouachita Parish Sheriff Senior Investigator James Humphrey, who was present for the search at 3012 Deborah Drive, applied for a state-court search warrant for Defendant's apartment, which he obtained. *Id.* at 6.

That same day, Agents executed the search warrant and found a computer inside Defendant's apartment with Freenet running on four hard drives. *Id.* The Agents found numerous images of CSAM on the hard drives. *Id.*

On October 26, 2022, Defendant was indicted on four counts of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2)(A). [doc. #1].

On March 2, 2023, Defendant filed the instant motion to suppress. [doc. #28]. On March 20, 2023, the Government filed its response. [doc. #30]. On June 7, 2023, the Court held a motion hearing. [doc. #37].

Accordingly, this matter is ripe.

## Relevant Testimony and Documentary Evidence

Three Government witnesses testified at the hearing: Dr. Brian Levine, Agent Scullin, and OPSD Investigator Humphrey.

Dr. Levine, a professor at the University of Massachusetts, was accepted as an expert in the field of networking and digital forensics at the hearing and testified consistently with the Government's recitations in its brief. [Hearing Transcript, pp. 7–34]. He explained that Freenet allows users' computers to communicate directly with each other to share files. *Id.* at 22. Freenet has two operational modes: "opennet" and "darknet." *Id.* at 16. In "opennet" mode, users connect

with other users whose identities are unknown.[1] [doc. #30, p. 3]; (Tr., pp. 16–17). Freenet allows files to be broken into pieces and stored on portions of users' hard drives and then encrypted, so that a user is unaware of the content of pieces filed on their hard drive. (Tr., pp. 17–19). Once a file is fully uploaded, the user who uploaded it receives a "manifest key" that must be entered to access the file. *Id.* at 19. The user then must share the manifest key with other users for them to access the entire file. *Id.* at 19–20. Manifest keys for CSAM files are made publicly available via Freenet-based message boards dedicated to child exploitation. [doc. #30, p. 3].

There is a Law Enforcement version of Freenet, developed by Dr. Levine, that allows for statistical analysis to identify, with some probability, the IP address that is requesting to download certain files from Freenet. *Id.* at 4 (described in greater technical detail); (Tr., p. 26).

Agent Scullin testified that, during his investigation, he used the law-enforcement version of Freenet and determined it was likely that a particular IP address was downloading CSAM. [doc. #30, p. 5]; Tr., pp. 38–40). He also determined that the last request for CSAM files to that IP address was in December 2021. (Tr., p. 45). Subsequently, on September 2, 2021, Agent Scullin obtained an administrative subpoena to Comcast Communications, Inc., and learned that the IP address belonged to Robert Brown at 3012 Deborah Drive in Monroe. *Id.* at 41–42.

At that time, Agent Scullin conducted further investigative activity and determined that Robert Brown, Sr., as well as Katherine Brown and Robert Scott Brown, Jr., all lived at 3012 Deborah Drive. *Id.* at 43–44. Agent Scullin performed other investigative measures, including criminal history checks, social media checks, physical surveillance, and employment status. *Id.* at 44. Agent Scullin determined that Robert Scott Brown, Jr., was employed by the Ouachita Parish

---

[1] Freenet warns users that, in opennet mode, they will not know the identity of other users with whom they connect. [doc. #30, p. 2]; (Tr., p. 16).

School Board as an IT professional. *Id.* During the investigation, Agent Scullin began collaborating with Investigator Humphrey, a task force officer assigned to the FBI's Monroe office. *Id.* at 45.

On January 28, 2022, Agent Scullin obtained a federal search warrant for 3012 Deborah Drive. *Id.* at 45. Agent Scullin, along with Investigator Humphrey, executed the warrant on February 1, 2022. *Id.* at 46. Agent Scullin interviewed Robert Brown., Sr., as well as Katherine Brown, and learned that their son, Robert Brown, Jr., had moved out at the end of December. *Id.* at 48. Agent Scullin testified that the timing of Brown, Jr.'s move was significant, as December 2, 2021, was the last date that he received leads identifying the IP address at 3012 Deborah Drive attempting to download suspected CSAM files. *Id.* at 48. Agent Scullin also testified that the timing of the last CSAM download, as well as the timing of Brown, Jr.'s move, was made known to other officials assisting in the search, including Inspector Humphrey. *Id.* at 48.

Agent Scullin further testified that he interviewed Brown, Jr., who, after being advised of his Miranda rights, admitted to viewing pornography daily, specifically in the genres of "old, young, and incest." *Id.* at 49. He denied knowledge of Freenet but confirmed he moved out at the end of December 2021. *Id.* Brown, Jr., indicated that he moved to an apartment at 3100 Deborah Drive. *Id.* at 50.

Later that day, Investigator Humphrey obtained a state search warrant for Brown, Jr.'s apartment. *Id.* at 50. Humphrey testified that he wrote the search warrant in his truck on a laptop. *Id.* at 61. He further testified that it was urgent that investigators obtain the warrant for fear of destruction of evidence. *Id.* Investigators obtained and executed the warrant for Brown, Jr.'s apartment and discovered a computer running Freenet. *Id.* at 50–51. Investigators later searched

the hard drive and found hundreds of CSAM materials, including a file that matched the original file that gave rise to Agent Scullin's investigation. *Id.* at 51.

## Law and Analysis

I.   *Motion to Suppress Standard*

Where a search violates the Fourth Amendment's protection against unlawful seizures, the exclusory rule allows suppression of the fruits of the unlawful search. *United States v. Leon,* 468 U.S. 897, 906 (1984).

A motion to suppress evidence obtained under a search warrant is analyzed under two steps. *United States v. Sibley*, 448 F.3d 754, 657–58 (5th Cir. 2006). First, the court must determine whether the good-faith exception to the exclusionary rule applies. *Id.* "The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." *Id.* (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2012)). The good-faith exception does not apply when (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. *Id.*

If the good-faith exception does not apply, the Court must proceed to the second step and determine whether the magistrate judge issuing the warrant had a "substantial basis for believing there was probable cause for the search." *Id.* (citing *United States v. Cherna*, 184 F.23d 403, 407 (5th Cir. 1999)). If so, then the motion to suppress should be denied. *See id.*

*II.    Analysis*

On March 2, 2023, Defendant filed the instant motion to suppress. [doc. #28-1]. He moves to suppress the evidence seized in this case "as a result of the staleness and paucity of information supplied by the affiant in the warrant and in light of the earlier warrantless search, intrusion, and seizure by a government entity." *Id.* at 3. In support, he advances four arguments: (1) that the affidavit supporting the state-court search warrant did not specify a time frame for the alleged illegal activity; (2) that no explanation was given for the delay between the alleged violations in the "last few months of 2021" and the state-court warrant's execution on February 1, 2022 which was "woefully stale"; (3) that no explanation was given explaining why evidence of criminal conduct would be at 3100 Deborah Drive, given there was no untoward computer activity connected to that address; and (4) that an "earlier search occurred without the benefit of a warrant" that forwarded information to "these investigating officers." [doc. #28-1, pp. 3–5].

On March 20, 2023, the Government filed its opposition. [doc. #30]. Therein, it responds with three arguments: (1) the state-court search warrant was supported by more than a "bare bones" affidavit, such that officers could rely in good faith on the warrant; (2) the warrant was not stale in light of Fifth Circuit case law holding that a six-month delay between the discovery of CSAM and the application for a search warrant did not render the warrant stale; and (3) Defendant had no reasonable expectation of privacy on Freenet; thus, law enforcement did not conduct an "earlier search" by observing and analyzing requests for CSAM files that Defendant voluntarily sent to peers. [doc. #30].

At the June 7 motion hearing, Defendant abandoned his argument that the review of Freenet data by FBI officers constituted an unreasonable search and seizure. (Tr., p. 73–74). Defendant also clarified that only two arguments remain: (1) that the state-court warrant was supported by

6

only a "bare bones" affidavit; and (2) that the state-court warrant was stale. *Id.* The Court will consider each argument.

   A. *The affidavit supporting the state-court warrant was not "bare-bones."*

"Bare bones" affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause. *United States v. Morton*, 46 F.4th 331, 336–37 (5th Cir. 2022) (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)). Bare bone affidavits typically contain statements like "the affiant has cause to suspect and does believe" or "the affiant received information from a credible person and does believe." *Id.* (citing SCOTUS and 5th Circuit "bare bones" cases). Where affidavits are multiple pages and contain facts and details surrounding the alleged illegal activity, they "have some meat on the bones" and are not wholly conclusory. *Id.*

Defendant argues that nothing in Inspector Humphrey's affidavit indicates that any evidence associated with Defendant's apartment at 3100 Deborah Drive was found at his parents' home at 3012 Deborah Drive. Defendant also argues that nothing in Inspector Humphrey's affidavit explains who accessed CSAM materials at 3012 Deborah Drive, provides any information as to when or where Defendant moved after he left 3012 Deborah Drive, or explains whether his move was related to CSAM materials found by investigators. Finally, Defendant argues that the affidavit fails to mention how CSAM materials were obtained by investigators or how CSAM materials are connected to Defendant.

In opposition, the Government argues that the affidavit contained sufficient information to support the warrant. Specifically, Investigator Humphrey explained in his affidavit that: (1) someone at 3012 Deborah Drive viewed CSAM images over the last few months of 2021; (2) no CSAM material was found during the search of 3012 Deborah Drive; (3) agents at the scene of

7

that search learned that Defendant had moved out of the home and into an apartment at 3100 Deborah Drive; and (4) the time that Defendant moved from 3012 Deborah Drive coincided with the time that CSAM activity ceased. [doc. #30, p. 9]. The Government also points to Investigator Humphrey's testimony that he prepared the affidavit in his truck, on-site, with a sense of urgency emanating from the possibility that Defendant might destroy evidence within his apartment.

Upon consideration of the affidavit, the undersigned agrees with the Government that it contained sufficient information to establish probable cause for the search.

First, Humphrey's extensive experience as an investigator lends his affidavit credibility. Investigator Humphrey testified that he has 27 years of experience in the Ouachita Parish Sherriff's Office, including 9 years as an FBI task force officer investigating child sex crimes. (Tr., p. 56–57). He also testified that he had attended "dozens" of courses and trainings on investigations of internet crimes against children. *Id.*

Second, the affidavit itself contains sufficient factual matter to provide probable cause for the search of Defendant's apartment at 3100 Deborah Drive. Humphrey's affidavit indicates that he was asked to assist the FBI with execution of a search warrant at 3012 Deborah Drive related to an investigation to persons viewing CSAM at that residence. [Gov. Exh. 2, p. 1]. Humphrey explained that upon contact with the residence, investigators learned that only Robert Brown, Sr., and Katherine Brown still lived in the home and that Robert Brown, Jr., had moved to 3100 Deborah Drive, Apartment 61, in December 2021. *Id.* Humphrey also stated that during a "Mirandized" interview with Robert Brown, Jr., he admitted to viewing "incest porn and other types of porn citing 'older/younger'" daily. *Id.* Humphrey indicated that no evidence of criminal activity was found at 3012 Deborah Drive and that there was no evidence of additional CSAM activity after Robert Brown, Jr., moved from the house in December 2021. *Id.*

This information is sufficient to support the state court judge's probable cause determination. The affidavit sets out Investigator Humphrey's knowledge of the investigation based on events he witnessed firsthand during the search at 3012 Deborah Drive, including Defendant's own statements. While Defendant points out that key questions—such as who accessed CSAM at 3012 Deborah Drive and whether Defendant's move to 3100 Deborah Drive related to CSAM—remained unanswered at the time the affidavit was signed, the undersigned agrees with the Government that the purpose of the investigation, and indeed the purpose of obtaining a search warrant for 3100 Deborah Drive, was to answer these questions. The fact that some information was not in the affidavit does not render it "bare bones." As discussed above, bare bones affidavits typically contain wholly conclusory statements. *See Morton*, 46 F.4th at 336–37; *see also United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986) (affidavit was bare bones where it relied on information from confidential informant but did not state what the information was). In this case, however, the affidavit sets out key facts from the investigation, including Defendant's admission that he moved to a different residence in December 2021, which coincides with the time CSAM activity ceased at 3012 Deborah Drive. Therefore, the affidavit was not bare bones, but provided probable cause for issuance of a search warrant. *See United States v. Mayes*, Case No. 2:20-cr-0131-01, 2023 WL 3144176, at *4 (W.D. La. Apr. 19, 2023) (affidavit not bare bones where it described sources of information and identified a cell phone number associated with the defendant); *United States v. Barazza-Coral*, No. 13-cr-0315-08, 2015 WL 13376704, at *7 (W.D. La. Sept. 18, 2015) (affidavit not bare bones where it set out officer's years of experience in law enforcement as well as matters officer's firsthand knowledge of the defendants' prior criminal histories and activities on the day of the search).

B. *The state-court warrant was not stale.*

Defendant also argues that the state-court warrant was stale at the time it was executed. Specifically, Defendant argues that "no specificity was set forth as to what the 'last few months of 2021' might actually be in terms of a time frame." [doc. #28-1, p. 1–2]. Furthermore, Defendant argues that no information was presented to explain why there was a delay from "the last few months of 2021" until the application for the warrant on February 1, 2022. *Id.* at 2.

In opposition, the Government points to Fifth Circuit case law holding that a six-month delay between the discovery of CSAM and the application for a search warrant did not render the warrant stale. [doc. #30, pp. 9–10]. In *United States v. Streetman*, 207 F. App'x 414, the defendant argued that a six-month delay between the date when child pornography was discovered on his computer and the date that the FBI obtained a search warrant rendered the warrant stale. *Id.* at 415. The Fifth Circuit affirmed the trial court's denial of the motion to suppress. *Id.*

Similarly, in a case almost identical to this one, the Fifth Circuit held that a six-month gap between the time investigators downloaded illicit files from defendant's IP address and the time the warrant issued did not make the information stale. *United States v. Morrow*, 789 F. App'x 398, 400 (5th Cir. 2019). "In fact, [the Fifth Circuit] ha[s] allowed much longer delays in similar cases." *Id.* (citing *United States v. Allen*, 625 F.3d 830 (5th Cir. 2010) (eighteen-month-old information not stale in child pornography case)). "This is because child-pornography crimes are "generally carried out in the secrecy of the home and over a long period of time; therefore, the same time limitations that apply to more fleeting crimes [like selling illegal drugs] do not apply." *Id.*

In the instant case, Agent Scullin testified that December 2, 2021, was the last time that the IP address traced to a computer at 3012 Deborah Drive accessed CSAM. Therefore, at most, 61

10

days passed between the date that investigators last detected CSAM at 3012 Deborah Drive and the application for a warrant to search the home, and, subsequently, Defendant's apartment at 3100 Deborah Drive. Therefore, applying Fifth Circuit precent, the two-month gap in this case does not render the warrant stale.

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to suppress [doc. #28] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 7th day of August, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE